UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MAURICE SPEARMAN, # 158437, | |
| Plaintiff, | Case No. 1:09-cv-632 |
| v. | Honorable Robert Holmes Bell |
| CATHLEEN STODDARD, et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The defendants are Bellamy Creek Correctional Facility's (IBC's) Warden Kenneth McKee, Deputy Warden Cathleen Stoddard, and Mailroom Employee D. Keller. Plaintiff alleges that defendants violated his First Amendment rights in the following ways:

1. Defendant Keller by failing to mail plaintiff's papers to the Appeals Division of the Michigan Department of Corrections (MDOC) with adequate speed (Compl. ¶¶ 6, 31-42);

2. Defendant Stoddard by "retaliating" against plaintiff (a) for providing legal assistance to prisoner Wilson by removing plaintiff from his preferred job assignment as a legal writer; and (b) for a note requesting a transfer resulting in plaintiff's transfer to a *lower* security level where he was not able to secure his preferred job assignment for approximately five months (*Id.* at ¶¶ 4, 19-30, 44-55); and

3. Defendant McKee by denying plaintiff's Step II appeal of a grievance against Stoddard (*Id.* at ¶¶ 4-6, 56-62).

Plaintiff sues defendants in their individual capacities (*Id.* at ¶ 3), and seeks injunctive and declaratory relief and an award of damages (*Id.* at ¶ V).

The matter is before the court on defendants' motion for summary judgment. (docket # 13). Plaintiff has filed his response (docket #s 18-20, 23), and the matter is ready for decision. For the reasons set forth herein, I recommend that plaintiff's claims for injunctive and declaratory relief be dismissed as moot. I further recommend that defendants' motion for summary judgment be granted, and that a final judgment be entered in defendants' favor on all plaintiff's claims for damages.

### **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.[1] FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings,

---

[1]"The standard for granting summary judgment remains unchanged" under the amendments to Rule 56 that went into effect on December 1, 2010. *See* FED. R. CIV. P. 56 advisory committee note (2010 amendments).

depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is in the custody of the Michigan Department of Corrections serving lengthy prison sentences[2]. Defendants are Bellamy Creek Correctional Facility's (IBC's) Warden Kenneth McKee, Deputy Warden Cathleen Stoddard, and Mailroom Employee D. Keller.

1. <u>Major Misconduct Conviction and Loss of Preferred Job Assignment</u>

In August 2008, plaintiff was an inmate at IBC. On August 1, 2008, he was charged with the major misconduct of theft and possession of stolen property. (08/01/08 Major Misconduct Report, docket # 14-2, ID # 69; Plf. Aff. ¶¶ 10, 11, docket # 20, ID # 164). On August 7, 2008, plaintiff received his hearing, and the hearing officer found plaintiff guilty of the major misconduct charge. (08/07/08 Major Misconduct Hearing Report, docket # 14-3, ID # 71; Plf. Aff. ¶ 12, ID # 165). On August 13, 2008, defendant Stoddard, acting as the warden's designee regarding work assignments, removed plaintiff from his job assignment based on the major misconduct conviction. (docket # 14-6, Stoddard Aff. ¶¶ 4-12, ID #s 78-80; docket # 22-3, Stoddard Aff. ¶¶ 4-8, ID #s 177-78; O.P. 05.01.100, ¶¶ F, J, ID #s 181-81).

---

[2] *See Spearman v. Birkett*, 10 F. App'x 287, 288 (6th Cir. 2001) ("In 1985, Spearman pleaded guilty to assault with the intent to murder, kidnaping, armed robbery, and several felony firearm violations" and "was sentenced as an habitual offender to a term of 52 to 202 years of imprisonment.").

Plaintiff states that he drafted a brief for a prisoner Wilson[3] and that one of the arguments he made within the brief was that the MDOC's disciplinary policy was invalid because it violated Mich. Comp. Laws § 24.207(k). (Plf. Aff. ¶¶ 8, 9, ID # 164). Defendant Stoddard had no knowledge that plaintiff was assisting prisoner Wilson and no knowledge of any legal argument(s) plaintiff was asserting on Wilson's behalf. (Stoddard Aff. ¶ 12, ID #s 79-80).

2. Unsuccessful Partial Appeal of the Major Misconduct Conviction

On August 26, 2008, plaintiff gave defendant D. Keller a disbursement authorization form and his papers addressed to the MDOC's Appeals Division challenging his major misconduct conviction. (Plf. Aff. ¶ 18, ID # 166). On September 4, 2008, Keller returned the materials to plaintiff because he did not have adequate funds in his account to pay for the postage. (docket # 18-10, ID # 158; Plf. Aff. ¶ 18, ID # 166). On September 4, 2008, plaintiff completed a second disbursement form and gave it to Keller. (Plf. Aff. ¶ 19, ID # 166; docket # 23-2, Plf. Aff. ¶ 5, ID #s 189-90). On September 9, 2008, the Appeals Division received plaintiff's appeal. (docket # 14-4, ID # 73). The Appeals Division denied plaintiff's appeal on the merits. (*Id.*). Plaintiff had sixty days after the date of delivery or mailing of the Appeals Division's decision within which to file his application for judicial review in the circuit court where he resided or in the circuit court for Ingham

---

[3]Plaintiff did not file the brief he claims to have drafted for Wilson in support of his claims in this case. His brief in this case indicates that on or about August 8, 2008, the brief was conveyed to Wilson. Plaintiff does not know when Wilson filed the brief. (Plf. Brief at 4). Statements appearing in a party's brief are not evidence. *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). There is no evidence establishing the identity of prisoner Wilson. His first name and MDOC prisoner number are not provided. These is no evidence that the purported brief was ever filed in any court.

County. MICH. COMP. LAWS § 791.255(2). Plaintiff did not seek judicial review, and the major misconduct conviction has never been overturned.

### 3. Incarceration Outside IBC

In October 2008, plaintiff was transferred to the Macomb Correctional Facility (MRF). Plaintiff sent a letter to a Mr. Lockhart complaining that he had been removed from his legal writer position. According to plaintiff, on or about December 9, 2008, Mr. Lockhart expressed an opinion that plaintiff's prison employment should not have been terminated. (docket # 20, Plf. Aff. ¶ 15, ID # 165). In late December 2008, plaintiff was transferred back to IBC. (Plf. Aff. ¶ 16, ID # 165).

### 4. Request for a Transfer and Subsequent Transfer to a Lower Security Level

On December 28, 2008, plaintiff wrote the following note to defendant Stoddard regarding his level of confinement:

Re: Confinement Level

Deputy Warden Stoddard:
 I find myself in a situation and no one will provide me with any answers. I am hoping that you will address my concerns or have someone provide me with answers.
 This is my situation. I am a level II prisoner that's in the Legal Writer Program and I agreed to have my confinement level raised to work in what I thought would be a level V facility. In July 2008, I was sent to IBC to work as a level [IV] writer. Shortly thereafter, you terminated me from the assignment. In late October 2008, I was transferred to MRF in part for a writ. I inquired before leaving IBC would I be returning and I was told no. In late December 2008, I was returned to IBC. Since the reason for bring[ing] me here is no longer in effect[,] why am I being ke[pt] in a level IV facility? I have no points, my confinement level is II and my management level is 1.
 It's not clear as to why[] MRF sent me back because the class[ification] Dir[ector] told me upon arriving that if there was no place for me to work at MRF he would have me transferred to a level II where I could work.
 I would like to thank you for your time and anticipate assistance in this matter.

(docket # 18-11, ID # 159). According to plaintiff, IBC's classification director classified him as a legal writer in Level IV custody, and he worked for a very short period from mid-January 2009 until February 5, 2009. On February 5, 2009, he was transferred to IBC's Level II prisoner population. (Plf. Aff. ¶ 16, ID # 165). Prisoners who are transferred to lower custody levels have the ability to have more out-of-cell movement and more freedom within the correctional facility. (Stoddard Aff. ¶ 13, ID # 80). The reduction in plaintiff's custody level was made by IBC's housing unit staff, not defendant Stoddard. (Stoddard Aff. ¶ 13, ID # 80). It took plaintiff approximately five months as a level II IBC inmate to secure his favored employment as a legal writer.[4]

     5.     <u>Denial of Plaintiff's Step II Appeal of a Grievance Against Stoddard</u>

On February 18, 2009, plaintiff filed a grievance against Stoddard complaining about his transfer to a lower security level. (docket # 14-12, ID # 116). The grievance was rejected at Step I because plaintiff had not complied with the Policy Directive P.D. 03.02.130 requirement that a prisoner attempt to resolve the matter with the staff member involved before filing his grievance. On March 6, 2009, Warden McKee found that the Step I response was adequate, and denied plaintiff's Step II appeal. (docket # 14-12, ID # 117).

On July 10, 2009, plaintiff filed this lawsuit.

---

[4]Plaintiff concedes that he returned to work as a legal writer on February 28, 2009. (Plf. Brief at 18, docket # 18, ID # 141).

## Discussion

1. **Mootness**

Plaintiff is currently an inmate at the Ionia Maximum Correctional Facility (ICF). (docket # 23). Defendants are employed by the State at IBC. Plaintiff's claims for injunctive and declaratory relief are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2. **Major Misconduct Conviction**

Plaintiff argues that he should not have been found guilty of the major misconduct. The Supreme Court has limited the availability of section 1983 actions for prisoners in certain disciplinary contexts because they are more appropriately addressed, if at all by a federal court, through a habeas corpus action, after exhaustion of available state remedies. The Sixth Circuit summarized the law in this area as follows:

> Federal courts have long recognized the potential for prisoners to evade the habeas exhaustion requirements by challenging the duration of their confinement under 42 U.S.C. § 1983, rather than by filing habeas petitions. Consequently, the Supreme Court recognized a "habeas exception" to § 1983 in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), when it held that suits challenging the fact or duration of confinement fall within the traditional scope of habeas corpus and accordingly are not cognizable under § 1983. The Court expanded the habeas exception to § 1983 in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). In *Heck*, the Court determined that, unless a prisoner's conviction or sentence were previously set aside by a separate legal or administrative action, § 1983 would not countenance claims for damages if a finding for the plaintiff would necessarily invalidate a conviction or sentence. And in *Balisok*, the Court concluded that a prisoner cannot use § 1983 to challenge prison procedures employed to deprive him of good-time credits when the alleged procedural defect alleged would, if established, "necessarily imply the invalidity of the punishment imposed." 520 U.S. at 648, 117 S.Ct. 1584.

*Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007). Because the effect of disciplinary proceedings on good time credits is a matter of state law or regulation, this court must consult Michigan law to determine whether the habeas bar applies to the plaintiff's claim. *Eby*, 481 F.3d at 439 (citing *Muhammad v. Close*, 540 U.S. 749, 754 (2004)). Under Michigan law, the nature of good time or disciplinary credits depends on when the criminal offense was committed. *LaFountain v. Harry*, 1:10-cv-943, 2011 WL 976461, at * 6 (W.D. Mich. March 16, 2011). Under Mich. Comp. Laws § 800.33(2), an eligible prisoner who committed his offense before April 1, 1987, receives automatic sentence reduction for any month in which he has not been found guilty of a major misconduct.[5] *See LaFountain*, 2011 WL 976461, at * 6; *Anthony v. Ranger*, No. 08-cv-11436, 2010 WL 1268031, at * 6 (E.D. Mich. March 30, 2010). Plaintiff's criminal offenses occurred long before before April 1, 1987, *see Spearman*, 10 F. App'x at 288, and he automatically forfeits good time credits whenever he sustains a major misconduct conviction. Plaintiff's attempt to challenge his conviction "remains noncognizable under section 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction." *LaFountain*, 2011 WL 976461, at *6. Defendants are entitled to judgment in their favor as a matter of law on all plaintiff's claims attempting to challenge his major misconduct conviction. Until and unless plaintiff is successful in

---

[5] *Compare Eby*, 481 F.3d at 439 (prisoners convicted and subject to Michigan's more recent and "less-generous" disciplinary credit system have no liberty interest necessarily impacted by a major misconduct conviction); *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) ("Because these [misconduct] findings represent just one among many factors that could affect the length of Nali's indeterminate sentence and because no one denies that Nali has the right to explain [to the parole board] the circumstances of the misconduct charge, the findings do not inevitably affect the duration of Nali's sentence and do not effect an atypical and significant hardship on [Nali] in relation to the ordinary incidents of prison life."); *Shoucair v. Snacker*, No. 05-cv-40341, 2010 WL 681283, at * 5 (E.D. Mich. Feb. 23, 2010) ('[T]he Complaint's allegation that the misconduct ticket was the cause of a January, 2006 parole denial fails to state a cognizable due process claim.").

overturning that conviction on direct or collateral review, he cannot maintain a section 1983 claim implying the invalidity of the misconduct conviction leading to a loss of good-time credits. *Edwards v. Balisok*, 520 U.S. 641 (1997).

### 3. Access to Courts

Plaintiff alleges that defendant D. Keller violated his First Amendment right of access to courts by mishandling plaintiff's disbursement request for mailing papers to the MDOC's Appeals Division requesting a rehearing on his major misconduct conviction. This claim is patently meritless.

It is well established that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" in a specific case. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354; *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (*en banc*) ("A prisoner's right of access to courts extends to direct appeals, habeas corpus applications, and civil rights claims only."); *see Carney v. Christiansen*, 375 F. App'x 494, 497 (6th Cir. 2010); *accord Dorn v. Lafler*, 601 F.3d 439, 443-44 (6th Cir. 2010). "'Depriving someone of a frivolous claim . . . deprives him of nothing at

all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'" *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (quoting *Lewis v. Casey*, 518 U.S. at 353).

The MDOC's Appeals Division denied plaintiff's request *on the merits*, not because the request was untimely. (docket # 14-4, ID # 73). Under Michigan law, plaintiff was required to exhaust his available administrative remedies before seeking judicial review of the hearing officer's decision. MICH. COMP. LAWS § 791.255(1). Plaintiff's thirty-day period for requesting reconsideration by the Appeals Division ended on a Sunday. The next business day was Monday, September 9, 2008, the date the Appeals Division received his appeal. (docket # 14-4, ID # 73). The Appeals Division did not reject plaintiff's request for reconsideration as untimely. It denied plaintiff's request on the merits. (*Id*).

Plaintiff failed to seek judicial review of the decision denying his request for rehearing. He had sixty days after the date of delivery or mailing of the decision on his application for rehearing within which to file an application for judicial review in the circuit court where he resided or in the circuit court for Ingham County. MICH. COMP. LAWS § 791.255(2). There is no legal authority supporting plaintiff's argument that Michigan's courts would have been forced to deny review, if he had sought it[6].

---

[6]If the timeliness of his request for reconsideration had ever been an issue in state court, there were at least three obvious arguments available to plaintiff: (1) where the deadline fell on a Sunday, a document filed the next business day should be considered timely, *see e.g.*, MICH. CT. R. 1.108(1); (2) the MDOC could not claim lack of exhaustion where it failed to enforce its own procedural rule, *see, e.g.*, *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010); and (3) equitable tolling, *see e.g., Hawkins v. Department of Corrections*, No. 293478, 2010 WL 1576764, at * 2-3 (Mich. Ct. App. Apr. 20, 2010).

There is no evidence that defendant Keller mishandled plaintiff's mail or disbursement requests, much less that he did so intentionally.[7] I find that no reasonable trier of fact could find in plaintiff's favor and that defendant Keller is entitled to judgment in his favor as a matter of law.

	4.	**Prison Employment, Place of Incarceration, and Security Level**

Plaintiff has no possible due-process claim against any defendant based on the denial of his preferred job placement, his place of incarceration, or his security level. Michigan prisoners do not enjoy any property interest in prison employment protected by the Due Process Clause. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (*en banc*); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *see also Brown v. Campbell*, No. 98-5182, 1999 WL 191240, at * 1 (6th Cir. Mar. 17, 1999) ("inmates do not have a constitutionally protected interest in their prison jobs"); *Hert v. Lewis*, No. 94-6097, 1995 WL 234662, at * 2 (6th Cir. April 20, 1995) (Sixth Circuit has "consistently held that prisoners have no constitutionally protected property interest or liberty interest in prison employment.").

Prisoners do not have the right to be housed at the institution of their choice and have no liberty interest in their place of incarceration. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Prisoners do not have a constitutional right to be incarcerated within a particular security

---

[7]Negligent handling of a prisoner's mail does not rise to the level of a constitutional violation. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006); *see also Stevenson v. Gamelin*, No. 2:08-cv-154, 2010 WL 915474, at * 3 (W.D. Mich. Mar. 12, 2010)(collecting cases).

classification. *See Meachum v. Fano*, 427 U.S. at 228-29; *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

     **5.    Denial of Plaintiff's Grievance Appeals**

Plaintiff has no possible claim against Warden McKee based on his denial of plaintiff's Step II grievance appeal. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). There is no claim of constitutional dimension because plaintiff had "no inherent constitutional right to an effective prison grievance procedure." *See Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Lyle v. Stahl*, No. 97-2007, 1998 WL 476189, at *1 (6th Cir. Aug. 3, 1998); *see also Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994) (no constitutional right to a grievance procedure).

     **6.    Retaliation**

Plaintiff alleges that defendant Stoddard retaliated against him[8] for drafting a brief for prisoner Wilson and for the note he wrote to Stoddard requesting a transfer. On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken

---

[8]Plaintiff's complaint uses the term "retaliation" with regard to Warden McKee (Compl. ¶ 5), but plaintiff provides no evidence that McKee terminated his employment, transferred him, or denied his grievance appeal for any reason other than the reason stated. The quotes plaintiff attempts to attribute to McKee through an assistant (Plf. Aff. ¶ 21) are hearsay. "[I]t is well established that hearsay evidence cannot be considered by a trial court ruling on a motion for summary judgment." *Tinsley v. General Motors Corp.*, 227 F.3d 700, 703 (6th Cir. 2000); *see Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006).

against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

A prisoner retains only those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see Heard v. Caruso*, 351 F. App'x 1, 7 (6th Cir. 2009) ("The Supreme Court has explained that although 'incarceration does not divest prisoners of all constitutional protections' the 'constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large.'") (quoting *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001)). "Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "The first element [plaintiff] must establish for his retaliation claim[s] [is] that he was engaged in conduct protected by the First Amendment."[9] *Hill v. Lippin*, 630 F.3d 468, 472 (6th Cir. 2010). The Sixth Circuit recognizes that a prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Frivolous grievances are not protected conduct. *See Hill v. Lappin*, 630 F.3d at 472; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th

---

[9] The Sixth Circuit has not yet found it necessary to resolve the question of whether a prisoner's speech must address a matter of public concern for it to constitute protected speech. *See Lockett v. Suardini*, 576. F.3d at 874 ("[W]hether the public-concern test determines the protection afforded a prisoner's speech is an open question in the Sixth Circuit."). Public employees are required to satisfy the "public concern" test of *Connick v. Myers*, 461 U.S. 138 (1983), and *Pickering v. Board of Educ.*, 391 U.S. 563 (1968). *See, e.g.*, *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 767-68 (6th Cir. 2010). The Supreme Court's recent decision in *Snyder v. Phleps*, 131 S. Ct. 1207, 1215-16 (2011), emphasizes the importance of the public concern component, and makes it more likely that an issue of public concern is a foundational requirement for protected prisoner speech. It would be extraordinary if convicted felons possessed greater free speech protections than public employees.

Cir. 2008) (calling a hearing officer a "foul and corrupted bitch" was not protected conduct); *Herron v. Harrison*, 203 F.3d at 415.

Plaintiff claims that he engaged in protected conduct representing prisoner unknown Wilson. "It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X*, 175 F.3d at 395 (citing *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993)). Plaintiff's proofs are inadequate to withstand defendants' motion for summary judgment on his derivative claim as prisoner Wilson's representative. A "jailhouse lawyer's" right to assist other inmates is "wholly derivative" of the other prisoner's right of access to courts:

> [A] "jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts: prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court.

175 F.3d at 395 (citing *Hopkins*, 10 F.3d at 378). "Thus, only if X's assistance is necessary to vindicate Bell's right of access to the courts can X too, state a claim of retaliation." 175 F.3d at 395. In *Thaddeus-X,* Earnest Bell and Thaddeus-X were co-plaintiffs,[10] and Bell stated that he had "no knowledge of the law and [was] unable to access the court in any meaningful way absent plaintiff X's assistance." *Id.* at 175 F.3d at 383, 395. Here, by contrast, the ostensible client is completely absent. There is no evidence regarding Wilson's first name or his MDOC prisoner number. As proof of his relationship with Wilson, plaintiff submitted a blank "Prisoner Request for Assistance from a Legal Writer" form, rather than a form signed by Wilson. (docket # 18-8, ID # 156). This

---

[10] In a derivative action, the party for whose benefit the action is brought is the real party in interest and is an indispensable party. *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522-23 (1947); *see Roh v. Devak*, No. 3:07-cv-1901, 2010 WL 5069874, at * 3 (D. Conn. Dec. 3, 2010)("[C]ourts appear unanimous in concluding that the party on whose behalf a derivative claim is brought is indispensable and one whose absence warrants dismissal.").

proves nothing. The brief plaintiff claims to have drafted on Wilson's behalf is conspicuous by its absence.[11] On the present record, a trier of fact would have no basis to conclude that Wilson existed, that plaintiff was indeed preparing a brief for him, the contents of the brief, or any other material fact. Plaintiff's derivative claim as Wilson's representative fails for lack of supporting evidence.

Plaintiff's note or "epistle" to Stoddard requesting a transfer (Plf. Brief at 2, 7) may or may not constitute protected conduct. The Supreme Court has cautioned federal courts not to become entangled in the minutiae of prison life,[12] and the Sixth Circuit has never recognized this type of routine communication as protected conduct. I will assume protected status for purposes of analysis.

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). A transfer from one prison to another generally "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First

---

[11]Michigan courts have rejected the argument that plaintiff claims he included in Wilson's brief. *See In re Parole of Roberts*, 591 N.W.2d 259 (Mich. Ct. App. 1998); *see also* docket #s 25-7, 25-8, ID #s 216-25).

[12]"Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Where, as here, a state penal system is involved, federal courts have an additional reason to accord deference to the appropriate prison authorities." *McKune v. Lile*, 536 U.S. 24, 37 (2002) (internal quotations and citations omitted).

Amendment rights." *Hix*, 196 F. App'x at 358. Here, plaintiff's claim is even more attenuated, because he was transferred to a *lower* security classification. Assigning a prisoner to a custody level, where he enjoyed greater freedom, is not an action that would deter a person of ordinary firmness.

Finally, under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory evidence reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken" *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim.").

Plaintiff's claim relies on temporal proximity alone. He has not presented evidence sufficient to support a causal connection between his protected activity and the decisions to remove him from his job assignment or transfer him to a lower security level.

"Even if the plaintiff establishes all three elements, the defendant may avoid liability by showing 'that the same action would have been taken in the absence of protected activity.'" *Whiteside v. Parrish*, 387 F. App'x 608, 612 (6th Cir. 2010) (quoting *Thaddeus-X*, 175 F.3d at 399). Defendant Stoddard has shown that she would have taken the same action if plaintiff had not represented Wilson or sent a note to her requesting a transfer. She removed plaintiff from his job assignment because he was found guilty of major misconduct. She cannot possibly be responsible for retaliatory transfer, because she did not transfer him. Defendant Stoddard is entitled to judgment in her favor as a matter of law on plaintiff's retaliation claims.

### **Recommended Disposition**

For the reasons set forth herein, I recommend that plaintiff's claims for injunctive and declaratory relief be dismissed as moot. I further recommend that defendants' motion for summary judgment (docket # 13) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages.

Dated: March 30, 2011  /s/ Joseph G. Scoville
United States Magistrate Judge

### **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All

objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).